OFINION. Black, Judge: (1) Petitioners’ first contention is that the entire Renegotiation Act of 1943, as amended by the Revenue Act of 1943, is unconstitutional. This proceeding was heard and petitioners’ brief was filed prior to the Supreme Court’s decision in Lichter v. United States, 334 U. S. 742. The Supreme Court sustained the constitutionality of the Renegotiation Act in the Lichter case. It, therefore, follows that petitioners’ attack on the general constitutionality of the Renegotiation Act is without merit, and it is overruled. (2) Petitioners’ next contention is that the Renegotiation Act is unconstitutional if applied to petitioners’ sales to Defense Plant Corporation. Petitioners concede that the Tax Court upheld the constitutionality of the act as applied to Defense Plant Corporation sales in National Electric Welding Machines Co., 10 T. C. 49, but they do not concede the correctness of the Tax Court’s decision in that case and continue to press it as one of the issues of law in this proceeding. Neither of the three cases decided by the Supreme Court in its opinion in the Lichter case, supra, had in it the precise question here raised. However, in National Electric Welding Machines Co., supra, we went into the constitutionality of the Renegotiation Act amendment of July 1, 1943, expressly including contracts with the Defense Plant Corporation, and we held that the provisions dealing with sales made under such contracts were constitutional. We think it is unnecessary here to repeat our discussion in that case. We think it is sufficient to say that we adhere to it. It follows that petitioners' contention (2) is denied. (3) The next issue which petitioners raised in their petition and which they strongly urge in their brief is that the first $458,300 (u/i2 of $500,000) of petitioners’ sales was not renegotiable in view of section 403 (c) (6) of the Renegotiation Act. Section 403 (c) (6) of the Renegotiation Act reads as follows: This subsection shall be applicable to all contracts and subcontracts, to the extent of amounts received or accrued thereunder in any fiscal year ending after June 30, 1943, whether such contracts or subcontracts were made on, prior to, or after the date of the enactment of the Revenue Act of 1943, and whether or not such contracts or subcontracts contain the provisions required under subsection (b), unless (A) the contract or subcontract provides otherwise pursuant to subsection (i), or is exempted under subsection (i), or (B) the aggregate of the amounts received or accrued in such fiscal year by the contractor or subcontractor and all persons under the control of or controlling or under common control with the contractor or subcontractor, under contracts with the Departments and subcontracts (including those described in clause (A), but excluding subcontracts described in subsection (a) (5) (B)) do not exceed $500,000 and under subcontracts described in subsection (a) (5) (B) do not exceed $25,000 for such fiscal year. If such fiscal year is a fractional part of twelve months, the $500,000 amount and the $25,000 amount shall be reduced to the same fractional part thereof for the purposes of this paragraph. Speaking with reference to the foregoing provision of the Renegotiation Act, petitioners contend in their brief as follows: Even though the aggregate of the amounts received is in excess of $500,000.00, it does not necessarily follow that Congress intended that a contractor or subcontractor should be deprived of its profits in respect of amounts received on the first $500,000.00 of sales. To state it another way, it does not seem reasonable that Congress intended that a competitor of petitioners with sales of less than $500,000.00 should be entirely exempt from renegotiation in respect of its entire sales under $500,000.00 and at the same time that petitioners should be deprived of their profits in respect of sales up to $500,000.00 on an annual basis. In Supply Division, Inc., 9 T. C. 1103, we held that the taxpayer in that case, whose aggregate renegotiable sales were in excess of $500,000, was subject to renegotiation notwithstanding its subcontracts were in amounts of less than $100,000 each. In that case, among other things, we said: * * * Under the terms of paragraph (6), subsection (e) is applicable to all contracts and subcontracts to the extent of amounts received or accrued thereunder in any fiscal year ending after June 30, 1943, regardless of whether they contain the provisions required under subsection (b), unless “the aggregate of the amounts received or accrued in such fiscal year * * * do not exceed $500,000.” Here the aggregate of the amounts received or accrued was $1,692,243.98, which clearly exceeds the $500,000 limitation. * * * In the instant case it has been stipulated that petitioners’ net sales for the period January 1 to November 30,1943, were $634,444.66. It has also been agreed that of this amount $72,380.54 was nonrenegotiable. This leaves $562,064.12 of petitioners’ net sales which are renegotiable. Thus, it is clear that in the instant case the limitation of $500,000 provided in section 403 (c) (6) is exceeded. Petitioners concede this fact if the sales to the Defense Plant Corporation are included. We have held they must be included under our decision in National Electric Welding Machines Co., supra. But, while petitioners concede that the $500,000 limitation has been exceeded if we take into account the Defense Plant Corporation sales, they argue in substance that we should construe section 403 (c) (6) so as to exempt $500,000 of the contractor’s sales from renegotiation. Petitioners base this argument on the premise that because a contractor whose sales do not exceed $500,000 is not renegotiated at all, therefore, Congress must have intended to exempt $500,000 of sales from renegotiation to the contractor whose profits are renegotiable under the law. Pursuing this argument further, petitioners arrive at the conclusion that not more than $23,011.43 of their profits during the period in question should be held to be excessive. We find no support for this theory, either in the legislative history of the act or in the regulations which have been promulgated to govern its enforcement. Therefore, petitioners’ contention that the first $458,300 of its sales during the period in question is not renegotiable is rejected. (4) Petitioners contend in the alternative that, if we hold that the first $458,300 of sales during the fiscal period in question is renegotiable, the act if so applied is unconstitutional. Petitioners’ precise point in this respect, so far as we have been advised, has not been passed upon in any renegotiation case thus far decided by the Tax Court. It was not involved under the facts in the three cases which were before the Supreme Court in Lichter v. United States, supra. However, we think the rationale of the Supreme Court’s, opinion in the Lichter case is applicable, and petitioners’ contention that the act is unconstitutional if thus applied is denied. Cf. Stein Brothers Mfg. Co., 7 T. C. 863. (5) The assignment of error here presented is that respondent erred in allowing only $50,000 instead of $75,000 for salaries on an annual basis to the partners in making its determination of excessive profits. In Stein Brothers Mfg. Co., supra, we pointed out that section 403 (c) (3) of the Renegotiation Act, applicable hereto, provides for recognition of deductions allowed for income tax purposes. A partnership is not allowed any deduction for income tax purposes on account of compensation of inactive partners, but the renegotiating authorities have recognized that allowance should be made for reasonable compensation for services actually rendered by them. In the instant case, in making its determination of petitioners’ excessive profits, the respondent has allowed $50,000 on an annual basis as a deduction for services actually rendered to the partnership by the four partners. Respondent has apportioned eleven-twelfths of this amount to the period here in question and has allocated the resulting figure to renegotiable sales and to nonrenegotiable sales on a proportionate basis. At the hearing there was considerable evidence devoted to what would be reasonable salaries for the four partners of the business during the period in question. After careful consideration of all this evidence, we have found that a reasonable amount for salaries of the four partners would be $60,000 on an annual basis. Of this amount eleven-twelfths should be apportioned to the period here in question and the resulting amount should be allocated to renegotiable sales and nonrenegotiable sales on the same proportionate basis as respondent Used in its determination. (6) Petitioners’ last contention is that they received no excessive profits whatever during said fiscal period from January 1 to November 30, 1943. The statute involved in this case is the Renegotiation Act of 1943, enacted February 25, 1944. Subsection (a) (4) (A) of that act provides: * * * In determining excessive profits there shall be taken into consideration the following factors: (i) efficiency of contractor, with particular regard to attainment of quantity and quality production, reduction of costs and economy in the use of materials, facilities, and manpower; (ii) reasonableness of costs and profits, with particular regard to volume of production, normal pre-war earnings, and comparison of war and peacetime products; (ill) amount and source of public and private capital employed and net worth; (iv) extent of risk assumed, including the risk incident to reasonable pricing policies; (v) nature and extent of contribution to the war effort, including inventive and development contribution and cooperation wth the Government and other contractors in supplying technical assistance; (vi) character of business, including complexity of manufacturing technique, character and extent of subcontracting and rate of turn-over; (vii) such other factors the consideration of which the public interest and fair and equitable dealing may require, which factors shall be published in the regulations of the Board from time to time as adopted. In respondent’s notice of determination which is the basis of this appeal, it states: In determining the excessive profits hereinafter determined, due consideration has been given to all such financial, operating and other data and information áo furnished or obtained, to each of the contentions so presented and to all of the factors referred to in subsection (a) (4) (A) of the Renegotiation Act. The burden of proof to show that respondent erred in its determination of excessive profits is on petitioners. Nathan Cohen, 7 T. C. 1002. We have carefully considered the whole record and we find no error in respondent’s determination except in the matter„of the salaries allowed for the four partners discussed in (5) above. Petitioners’ contention that we should find no excessive profits whatsoever during the period in question is not sustained. The foregoing disposes of all the issues raised by petitioners. Respondent has raised an affirmative issue by an amendment to its answer filed at the hearing. In this amendment respondent asks that we determine the excessive profits of petitioners to be $80,000 instead of $70,000 as determined in respondent’s notice. Respondent bases its contention for this increase in petitioners’ excessive profits solely on the ground that in its original determination it allowed too much salary for the four partners and that a reasonable allowance for salaries of the four partners would be not more than $25,000. The burden of-proof to sustain its affirmative allegations is on respondent. Nathan Cohen, supra. We do not think respondent has sustained this burden and we so hold, and we find against its contention that we should increase the amount of petitioners’ excessive profits to $80,000. Our ultimate conclusion is that petitioners’ profits for the period here in question subject to renegotiation were excessive in the amount .of $61,880. Reviewed by the Court. An order will be issued in accorda/rwe herewith.